UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4953
Fax (410) 962-2985

June 22, 2020

LETTER TO COUNSEL

RE: *Andre S. v. Commissioner, Social Security Administration*
Civil No. JMC- 8:19-cv-00999

Dear Counsel:

On April 3, 2019 Andre S. ("Plaintiff") petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). The Court has considered the parties' cross-motions for summary judgment. (ECF Nos. 16 & 22). The Court has also considered Plaintiff's response thereto. (ECF No. 23). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2019). The Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, the Court will DENY Plaintiff's Motion, and GRANT the Defendant's Motion. This letter explains my rationale.

Plaintiff filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on January 3, 2011. (Tr. 158–71). He alleged a disability onset date of November 14, 2010. (Tr. 158, 164). His claims were denied initially and on reconsideration. (Tr. 110–17). A hearing was held on September 10, 2012, before Administrative Law Judge ("ALJ") Larry K. Banks. (Tr. 34–70). Following the hearing, ALJ Banks determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 15–33). Although the Appeals Council initially denied review, this Court remanded this case on September 4, 2015. (Tr. 633–37), *see* Civ. Case. No. 14-cv-1272-JMC, (ECF No. 23).

Following this Court's remand,[1] ALJ Bright held a video hearing on May 24, 2016. (Tr. 554–605). Following the hearing, ALJ Bright issued a partially favorable decision, finding Plaintiff disabled as of August 23, 2015. (Tr. 642–65). The Plaintiff then appealed this decision. The Appeals Council subsequently remanded the case and directed the ALJ to consider the established disability onset date as well as to certain opinions of record. (Tr. 666–71). In accordance with the Appeals' Council's remand order, ALJ Bright held another hearing on February 15, 2018. (Tr. 522–53). On January 30, 2019, ALJ Bright issued a partially favorable decision, finding Plaintiff was not disabled prior to February 22, 2016, but became disabled on that date and has continued to be disabled through the date of this decision. (Tr. 500). Plaintiff was not under a disability within the meaning of the Social Security Act at any time through

---

[1] The ALJ consolidated these claims with a subsequent Title XVI application, deeming such duplicative. (Tr. 499).

December 31, 2011, the date last insured. "All administrative remedies having been exhausted, Plaintiff then filed this action for judicial review." (ECF No. 16-2 at 3).

In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [his] ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability November 14, 2010. (Tr. 502).

At step two, the ALJ determined that since the onset date of disability, Plaintiff suffered from the following severe impairments: chronic pulmonary insufficiency ("COPD"), hypertension, obesity, osteoarthritis, lumbar degenerative disc disease, high cholesterol, type II diabetes, and gout 20 CFR 404.1520(c) and 416.920(c)). (Tr. 502). Despite these impairments, the ALJ determined since November 14, 2010, Plaintiff retained the residual functional capacity ("RFC") to:

> Perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant could lift, carry, push and pull up to 10 pounds occasionally. He could stand and/or walk for approximately two hours and sit for approximately six hours within an eight-hour workday, with normal breaks. He could occasionally climb ramps and stairs as well as occasionally balance, stoop, crouch, kneel and crawl. He could never climb ladders, ropes, or scaffolds. He had to avoid even moderate exposure to pulmonary irritants such as fumes, odors, dusts, gases, poorly ventilated areas and chemicals. He had to avoid concentrated exposure to excessive noise, extreme cold, extreme heat, wetness and humidity. (Tr. 505).

After considering the testimony of a vocational expert ("VE"), the ALJ determined that, prior to February 22, 2016 (the date Plaintiff's age category changed), there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. (Tr. 510).

Accordingly, the ALJ concluded that Plaintiff was not disabled prior to February 22, 2016 but became disabled on that date and has continued to be disabled through the date of her decision. (Tr. 511).

Plaintiff's raises two primary arguments on appeal: (1) the ALJ's RFC determination was not supported by substantial evidence; and (2) the ALJ erred in failing to adequately evaluate the claimant's credibility. See (ECF No. 16-2).

### *The ALJ's RFC Determination is Supported by Substantial Evidence*

In support of his contention that the ALJ erroneously assessed his RFC, Plaintiff asserts two sub-claims. These claims are that the ALJ: (1) failed to include a function-by-function analysis before assessing Plaintiff's capabilities in his RFC; (2) erroneously evaluated the opinion of Plaintiff's treating physician, Dr. Mathur. (ECF No. 16-2 at 14).

With regard to Plaintiff's argument that the ALJ inadequately explained his findings, Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his . . . work related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. To further satisfy this requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination. *White v. Comm'r, Soc. Sec.*, 2017 WL 1373236, *1 (D. Md. Apr. 13, 2017). Specifically, an ALJ's "RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination. *Bowers v. Comm'r, Soc. Sec.*, Civ. No. SAG–11–1445, 2013 WL 150023, *2 (D. Md. Jan. 11, 2013) (quoting *Taylor v. Astrue*, Civ. No. BPG–11–0032, 2012 WL 294532, *6 (D. Md. Jan. 31, 2012)).

Substantial evidence of record, cited by the ALJ, supports the function-by-function analysis of Plaintiff's work-related abilities and the narrative discussion regarding the ultimate RFC finding. In her five-page written narrative, the ALJ discussed and considered Plaintiff's hearing testimony, made a credibility determination, considered Plaintiff's diagnoses and treatment, discussed the report of medical consultant Edwin Cruz, M.D., and considered medical examination results, including an electromyogram (EMG) study. (Tr. 505–09). The ALJ also referred to Plaintiff's poor treatment compliance, including that he stopped taking prescribed medications. (Tr. 506). The ALJ's citations to the evidence of record demonstrate that the ALJ set forth a sufficient narrative discussion of Plaintiff's symptoms and medical source opinions in determining his RFC. Accordingly, based on the substantial evidence of record cited by the ALJ to support the RFC determination, Plaintiff's argument is without support.

### *Treating Physician Rule*

Plaintiff next contends that the ALJ erroneously evaluated the opinion of Plaintiff's treating physician, Dr. Mathur, by failing to apply the factors enumerated in 20 C.F.R. § 416.927(c)(2)-(6). (ECF No. 16-2 at 14).

When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is

3

not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. *Id.*

In this case, the ALJ afforded Dr. Mathur's opinions only "partial weight." Plaintiff argues the ALJ's RFC determination cannot be supported by substantial evidence because she did not discuss all of the limitations that Dr. Mathur set forth in all of his assessments.[2] Specifically, Plaintiff argues that the ALJ ignored manipulative limitations imposed by Dr. Mathur and failed to explain why this limitation was not adopted. (ECF No. 16-2 at 26). Plaintiff points to "several medical opinions" noting manipulative reaching limitations caused by Plaintiff's osteoarthritis of his shoulder and forearm. (ECF No. 16-2 at 14). Plaintiff refers, first, to a Medical Report completed by Dr. Mathur on February 8, 2012, wherein Dr. Mathur checked a box indicating that Plaintiff's physical limitations meant that he could "never" reach. (Tr. 418). Next, Plaintiff refers to an additional check box form wherein Dr. Mathur indicated that Plaintiff had "limited" ability to reach in all directions, due to "osteoarthritis in his right shoulder and limited adduction and obduction." (Tr. 490).

While the ALJ's decision must "set[] forth a discussion of the evidence, and stat[e] the commissioner's determination and the reason or reasons upon which it is based . . . there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r, Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Plaintiff essentially asks the Court to reweigh the evidence in order to reach a different conclusion than the one the ALJ ultimately reached in this case. However, "this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence." *Griffin v. Comm'r, Soc. Sec.*, Civ. No. SAG–16–274, 2017 WL 432678, *2 (D. Md. Jan. 31, 2017) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). For the reasons described below, the Court determines that the ALJ's decision was supported by substantial evidence.

In accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c), the ALJ provided an extensive review of Dr. Mathur's reports and made explicit mention of why and how she discredited his opinions. After ALJ acknowledging that Dr. Mathur is a long-time treating source, the ALJ afforded his opinion with only partial weight because: Dr. Mathur's opinions contained inconsistencies and variations; Plaintiff's treatment was conservative; and Dr. Mathur's opinions were not fully consistent with the evidence of significant benign objective findings. (Tr. 508–509).

Dr. Mathur's treatment records contained marked internal and external inconsistencies. For example, although Dr. Mathur opined that Plaintiff could not reach in 2012, the ALJ also noted that more recent treatment records indicated that Plaintiff "*had a full range of motion of his extremities*, but that this right knee was swollen, slightly warm to the touch, but not red." (Tr. 507) (emphasis added). As the Commissioner noted, no other provider found such restrictive

---

[2] Despite Dr. Mathur's "treating source status since 2007," he also prepared consultative opinions. (Tr. 508).

manipulative limitations. (ECF No. 22-1 at 7) *See, e.g.*, (Tr. 484–88) (outlining Medical Consultant M.D. Moore's finding that Plaintiff had no manipulative limitations). This is not a situation where the ALJ clearly failed to consider probative evidence, rather she identified relevant evidence in the record and explained that Dr. Mathur's opinion was not consistent with examination results and objective findings this date. (Tr. 508–09).[3]

Dr. Mathur's determination as to the onset date of Plaintiff's disability was similarly inconsistent within his own reports. In a December 2010 report, Dr. Mathur opined that Plaintiff's medical condition prevented him from working from "12/29/10 to 12/28/11," and it was only expected to last until 12/28/11. (Tr. 417). On the very same page of this report, however, Dr. Mathur said that Plaintiff's medical condition would "result in death." *Id*. In further contrast, in Dr. Mathur's report in 2012, he said Plaintiff's limitations began in 2007. (Tr. 493). In Dr. Mathur's 2016 report, nevertheless, he said that Plaintiff's "limitations" began in January of 2012. (Tr. 1063). Dr. Mathur's contradictory opinions constitute substantial evidence to support the ALJ's decision not to give controlling weight to his opinions. *Travis C. v. Saul*, 2019 U.S. Dist. LEXIS 147118, *17–18 (D. Md. Aug. 19, 2019).[4]

Dr. Mathur's reports also conflicted with Plaintiff's testimony. During the hearing the ALJ asked Plaintiff, "you were doing heavy work in 2010 and then the very next day you couldn't even walk. Was it a gradual thing or you woke up one day and you couldn't walk sit or walk anymore?" (Tr. 539). Plaintiff explained that "it just hit me all at once. It's my back and my legs gave out and then my lungs started acting up. It hit me all at once . . . ." *Id*.

The ALJ also noted that the benign objective findings and record of conservative care did not support the degree of limitations in "each of Dr. Mathur's slightly varied statements." (Tr. 509). The ALJ addressed Plaintiff's contention that the results of a June 2012 electromyogram study supported the limitations identified by Dr. Mathur. *See* (Tr. 550) ("I've litigated this thing several times and there's a reason why it keeps coming back on remand and that's because the objective evidence in this case is strong. If you review the EMG study . . . dated June 6, 2012, 9F, you'll see that."). In reviewing this EMG, the ALJ noted that it identified "mild" abnormalities of the right saphenous and left peroneal nerves. (Tr. 509). The study also found "marked" abnormality of the light saphenous nerve and "very severe" abnormality of the right peroneal nerve. *Id*. After considering this evidence, the ALJ emphasized that, "[n]evertheless, other evidence shows that the claimant exhibited normal gait and station." For example, Dr. Cruz specified that Plaintiff did not need a cane to ambulate. (Tr. 509).

---

[3] Fundamentally, Plaintiff's contention that "there was simply no *acknowledgement* of important and material evidence," nor of "key findings regarding the range of motion deficiencies within Plaintiff's upper extremities," is wholly without merit. (ECF No. 16-2 at 26). The ALJ explicitly acknowledged this evidence. *See, e.g.*, (Tr. 502) (discussing Plaintiff's March 2010 x-rays), (Tr. 503) (considering physical examination that revealed severe right shoulder pain with a limited range of motion and Dr. Mathur's opinion that Plaintiff could not reach at all).

[4] *See Sharp v. Colvin*, 660 Fed. App'x 251, 257 (4th Cir. 2016) (treating physician's treatment notes that were inconsistent with his contrary opinion constituted substantial evidence to support ALJ's decision not to give controlling weight to physician's opinion), *Thompson v. Berryhill*, No. CV CBD-16-3867, 2018 WL 784064, *4 (D. Md. Feb. 7, 2018) (explaining this Court's determination that "the ALJ satisfied his burden to produce substantial evidence contradicting [treating physician's] opinions by drawing on [treating physician's] own treatment records."), *Skinner v. Berryhill*, 2017 WL 5624950, *10 (D. Md. 2017).

Further, the ALJ discussed how Plaintiff's activities of daily living did not support the limitations described by Dr. Mathur. See *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (noting claimant's daily activities can support ALJ's discounting of treating physician's opinion). As the ALJ noted, Plaintiff testified in 2011 that he was a single parent caring for his son, and denied any problems providing childcare, although he alleged his sister provided some assistance. In Plaintiff's February 2011 Function Report, he acknowledged preparing simple foods, including spending about two hours on this task. (Tr. 509) (citing 6E). Plaintiff also noted that he "performed other household chores as well as going outside daily, driving, riding in a car, shopping in stores, paying bills, handling a savings account, watching television, and talking with others daily." *Id*. Accordingly, the ALJ determined that the abnormalities in the EMG study did not result in the degree of limitations alleged by Plaintiff. (Tr. 509).

Moreover, Plaintiff failed to mention arthritis or reaching limitations within the most recent hearing in 2018. (Tr. 522–53). As the Commissioner notes, Plaintiff instead complained only of his COP and back impairment. (Tr. 533) (discussing back and breathing problems), (Tr. 535) ("Well when I'm standing I can't stand no more than 10 minutes. My back, is just, it just gets so heavy on my back just standing there burning and so I can't move around too much standing."), (Tr. 551) (directing ALJ to "some key evidence," regarding breathing, weight bearing, and smoking credibility determination).

As outlined above, the ALJ provided an extensive narrative analysis as to all the medical evidence of record, Plaintiff's alleged limitations, treatment notes, objective evidence of record, examinations, and evaluations. This Court will not re-weigh the evidence or substitute its judgment for the Secretary. *See Craig*, 76 F.3d at 589. The ALJ applied the correct legal standards and substantial evidence supports her findings. Accordingly, Plaintiff's assignment of error with respect to the ALJ's analysis of Dr. Mathur's opinion is without merit.

*Credibility Determination*

Plaintiff next relies on *Lewis v. Berryhill,* 858 F.3d 858 (4th Cir. 2017), to argue the ALJ applied an improper legal standard to discredit Plaintiff's subjective symptoms and his treating physician's opinions which supported his limitations. (ECF No. 16-2 at 26).

The Court of Appeals for the Fourth Circuit laid out the two-step process for evaluating whether a person is disabled by pain and other symptoms under 20 C.F.R. §§ 404.1529 and 416.929. First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects. *Lewis*, 858 F.3d at 865–66 (internal citations omitted); *see also Craig*, 76 F.3d at 594 (describing the two-step process). At the second stage, the ALJ must consider all of the available evidence, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

For background, in *Lewis*, the United States Court of Appeals for the Fourth Circuit determined that remand was required, in part, because "[t]he ALJ's decision applied an improper legal standard to discredit [the claimant's] [credibility]." 858 F.3d at 870. Specifically, the Fourth Circuit held that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions. *Ellentuck v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-16-3884, 2017 WL 6997945, *2 (D. Md. Oct. 30, 2017) (quoting *Lewis*, 858 F.3d at 866). Social Security regulations do not permit an ALJ to "reject [a claimant's] statements about the intensity and persistence of [ ] pain or other symptoms or about the effect [those] symptoms have on [a claimant's] ability to work *solely* because the available objective medical evidence does not substantiate [his or her] statements." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added); *see* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Rather, the Fourth Circuit emphasized that the ALJ failed to "explain in his decision what statements by [the claimant] undercut [the] subjective evidence . . . as limiting [the claimant's] functional capacity." *Lewis*, 858 F.3d at 866. Accordingly, the *Lewis* Court remanded because the ALJ failed to cite sufficient evidence of the claimant's own statements to discredit her credibility. Likewise, Plaintiff contends that the ALJ failed to explain what statements by Plaintiff undercut his subjective evidence of pain intensity as limiting his functional capacity. (ECF No. 16-2 at 29).

In considering Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ determined they were inconsistent with the record prior to the established onset date. (Tr. 506–09). Overall, the ALJ concluded that:

> The claimant's allegations of debilitating pain and other symptoms are inconsistent with the medical imaging, diagnostic testing, modestly abnormal examination findings, and treatment notes demonstrating at least somewhat successful treatment. Rather, the undersigned finds that the objective medical evidence discussed above establishes the claimant has greater sustained capacity than alleged and demonstrates that claimant retains the capacity to perform work activities with the limitations set forth above. (Tr. 509)

Here, the ALJ properly evaluated Plaintiff's credibility.[5] In addition to the aforementioned analysis, the ALJ found that Plaintiff's own testimony undermined his subjective complaints of alleged physical symptoms. The ALJ noted that when Plaintiff testified in 2011, he denied having problems providing healthcare, and indicated that he was able to prepare simple foods and perform other household chores akin to those done by single parents. (Tr. 509, 540). Thus, the ALJ adequately "explain[ed] in her decision what statements by [Plaintiff] undercut [the] subjective evidence . . . as limiting [his] functional capacity." *Ellentuck*, 2017 WL 6997945, at *3.

The ALJ also recognized Plaintiff's unwillingness to do what was necessary to improve his condition (*i.e.*, stop smoking), which may "also be an indication that his symptoms were not as severe as he purported." (Tr. 506). *See* (Tr. 507) (recognizing medical records throughout this

---

[5] *Cf. Haiber v. Comm'r, Soc. Sec. Admin.*, No. Civ. SAG-16-3396, 2017 WL 6997838, *3 (D. Md. Oct. 31, 2017).

time, including those from a hospital visit in October 2014, indicated "significant benign objective findings as well as continued noncompliance by smoking cigarettes."). The ALJ also cited to Plaintiff's medical records, which detailed his decision to stop taking his medications. (Tr. 506). Moreover, the ALJ opined that the conservative nature of Plaintiff's treatment further undercut the alleged severity of Plaintiff's symptoms. (Tr. 507) (recognizing the "findings of Drs. Mathur and Meelu were significantly benign and resulted in conservative, non-surgical, care."). *See Dunn v. Colvin*, 607 Fed. App'x. 264, 273 (4th Cir. 2015) (recognizing that "it is appropriate for the ALJ to consider the conservative nature of a plaintiff's treatment—among other factors—in judging the credibility of the plaintiff"). The ALJ determined that all this evidence, including Plaintiff's testimony, was simply inconsistent with the degree of limitations that the claimant alleged. *See also* SSR 96-7p, 1996 WL 374186, at *6 (noting "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is [ ] one factor that the adjudicator must consider in assessing an individual's credibility.").

In considering Plaintiff's statements about the intensity, persistency, and limiting effects of his symptoms, the ALJ carefully explained how they were "inconsistent with the record prior to the established onset date," utilizing objective evidence, in addition to Plaintiff's own statements. Accordingly, the ALJ, by considering Plaintiff's "objective medical evidence, . . . daily activities, . . . [and subjective] description[s] of pain," properly assessed his credibility. *Bostic v. Astrue,* 474 Fed. App'x. 952, 954 (4th Cir. 2012). Remand on this basis is therefore unwarranted.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 16) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 23) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate Order shall issue.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge